FILED
United States Court of Appeals
Tenth Circuit

October 16, 2013

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

ONESOURCE COMMERCIAL
PROPERTY SERVICES, INC., a
Colorado corporation; AFFORDABLE
SWEEPING, INC., a Colorado
corporation,

     Plaintiffs-Appellees,

v.

CITY AND COUNTY OF DENVER, a
municipal corporation; KEN GREEN;
XAVIER DURAN,

     Defendants-Appellees.

No. 12-1315
(D.C. No. 1:10-CV-02273-WJM-KLM)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE,** Chief Judge, **SEYMOUR** and **LUCERO**, Circuit Judges.

Plaintiffs OneSource Commercial Property Services, Inc. and Affordable

Sweeping, Inc., independent contractors who provided various cleaning services at the

Denver International Airport, appeal from the district court's grant of summary judgment

in favor of defendants City and County of Denver, Ken Greene and Xavier DuRán on

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

their claims of race and sex discrimination filed pursuant to 42 U.S.C. §§ 1981 and 1983. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the grant of summary judgment.

I

*Factual background*

Knapp Holdings, Inc. is a Colorado corporation doing business as OneSource Commercial Property Services, Inc. (OneSource). OneSource is 51% owned by Lori Knapp, a white female, and 49% owned by Kevin Knapp, a white male.

Affordable Sweeping, Inc. (ASI) is 80% owned by Claudia Baca, a white female. The remaining 20% of ASI is owned equally by Baca's two sons, William Baca and Benjamin Baca, both of whom are Hispanic.

From September 2007 through April 2009, plaintiffs OneSource and ASI provided pressure-washing services at Denver International Airport (DIA) pursuant to various purchase orders issued by the City and County of Denver (the City). Although plaintiffs alleged in the district court that discrimination occurred in relation to the defendants' issuance of pressure-washing contracts, they have abandoned those claims in this appeal.

In March 2008, the City decided, for the first time ever, to have an outside contractor clean the baggage tunnels at DIA. Consequently, the City elicited and accepted proposals from contractors for the provision of baggage-tunnel cleaning services. Plaintiff OneSource submitted a proposal to the City and, on April 21, 2008, Kenton Janzen, a Senior Buyer for the City, notified OneSource by letter that its proposal

2

had been accepted subject to certain conditions, including the provision of a bond. On April 30, 2008, Kevin Knapp emailed Janzen and informed him that OneSource's "bonding company [wa]s wanting to know the amount of the contract." App. Vol. II at 367. Janzen responded that, "[a]ccording to" the City's Purchasing Manager, "they [we]re estimating approximately $390,000/yr for each of the 1st two years." Id. Janzen subsequently indicated to Kevin Knapp that "the duration of the 1st contract (without renewals)" would "be for 2 years." Id. at 390.

In early June 2008, "the contract was put on hold" for reasons unexplained in the record. Id. at 415. Several months later, however, the parties began moving forward on the contract and, by early November 2008, Janzen had in place a draft of "the tunnel cleaning contract . . . ready for signatures from" OneSource. Id. at 370. The City and OneSource formally executed the contract (Contract No. CE 82157) on December 30, 2008. Contrary to Janzen's initial statements to Kevin Knapp, the contract expressly provided that it had a one-year term ending on December 31, 2009. The contract also stated that the term could "be extended by the mutual agreement of the parties, confirmed by written notice from the City to [OneSource], to allow the completion of any work which ha[d] been commenced prior to" the termination date of the contract. Id., Vol. I at 224. The City's "Maximum Liability" under the contract was $400,000 (unless "changed only by a duly executed written amendment to th[e] Contract"). Id.

The contract terms expressly authorized OneSource to subcontract the tunnel-cleaning work. Consequently, OneSource, through its subcontractor ASI, proceeded to

3

perform the tunnel-cleaning services outlined in the contract.

On October 12, 2009, plaintiffs were informed that the City would not exercise the option to renew the tunnel-cleaning contract. Kevin Knapp, in response, emailed various City employees, as well as City Council members, asking about the nonrenewal decision. Kim Day, the Manager of Aviation at DIA, directed defendant Xavier DuRán, the Director of Airport Legal Services, and Ken Greene, the Deputy Manager of Aviation for Maintenance, to work with Knapp to address his concerns. Prior to working with the plaintiffs, neither DuRán nor Greene had ever personally handled an extension of a contract between the City and a vendor.

Greene and DuRán met with Kevin Knapp and Claudia Baca on several occasions to discuss their concerns relating to the nonrenewal of the contract. During those discussions, Kevin Knapp requested that the contract be extended for one additional year and the overall amount of the contract be increased. Greene in turn indicated that he would be willing to ask the City Council to approve a one-year contract extension in the amount of $390,000. Ultimately, however, after considering the square footage of tunnel-cleaning work to be completed and the average cost of cleaning the remaining area, Greene recommended to Day that plaintiffs be issued an amended contract extending the terms of the original contract only to April 30, 2010, and increasing the total contract amount to $490,000. An amended tunnel-cleaning contract was subsequently issued to plaintiffs on these terms. Plaintiffs executed the amended contract, but raised several questions about it. In particular, plaintiffs questioned why the matter was never presented

4

to the City Council, but expressed hope that the contract could run for at least two years as originally contemplated when they submitted their bid. Plaintiffs apparently believed at that time that Greene and DuRán might still present a full-year contract extension to the City Council for approval.

On April 23, 2010, Greene and DuRán notified the plaintiffs that the City had chosen not to further renew the tunnel-cleaning contract. Greene and DuRán also informed the plaintiffs that they "ha[d] reviewed the airport's other current maintenance needs" and that there was no "other work that [plaintiffs] c[ould] perform at th[at] time." Id., Vol. II at 407. Since April 23, 2010, the City has not hired any other company to clean the tunnels at DIA, and instead utilizes in-house personnel to conduct any necessary cleaning of the tunnels at DIA.

At no time did DuRán or Greene make any racial or gender-derogatory remarks about or to the plaintiffs. Nor did plaintiffs ever complain to the City about any alleged racial and gender-discriminatory conduct on the part of City employees.

OneSource filed an administrative complaint with the City's Manager of Aviation alleging breach of contract.[1] That administrative complaint was denied. OneSource subsequently filed a civil action in the Denver County District Court appealing the denial of its administrative complaint and alleging breach of contract. Summary judgment was

_____

[1] The contract expressly provided that "[d]isputes arising out of this agreement shall be resolved by administrative hearing before the Manager of Aviation," and "no cause of action shall be brought against the City until there has been full compliance with the terms of this Section." App. Vol. I at 230.

entered against the plaintiffs and the action dismissed.

*Procedural background*

Plaintiffs initiated this action on September 16, 2010. Plaintiffs subsequently filed an amended complaint which, in pertinent part, asserted claims against the City, Greene, and DuRán for gender and racial discrimination under 42 U.S.C. §§ 1981, 1983, and 2000d. In the final pretrial order, plaintiffs summarized those claims as follows:

> Plaintiffs are companies majority owned and/or operated by white females. These companies provide pressure washing and other cleaning services. Defendants asked Plaintiffs to begin providing . . . tunnel cleaning services [at DIA] in 2008. This lawsuit arises from these Plaintiffs' experiences at DIA.
>
> Among Plaintiffs' claims is that Defendants discriminated against Plaintiffs on the basis of their race and/or sex when . . . Defendants promised Plaintiffs a two-year tunnel cleaning contract, but then failed to honor their oral and written promises.

App. Vol. II at 478.

On February 17, 2012, the City, DuRán, and Greene filed a joint motion for summary judgment. On August 2, 2012, the district court granted the defendants' motion for summary judgment and entered judgment in favor of the defendants.

Plaintiffs filed a notice of appeal on August 15, 2012.

II

Plaintiffs raise two issues on appeal. First, plaintiffs contend that the district court erred in denying them discovery of emails exchanged between Greene and DuRán on the grounds of attorney-client privilege. Plaintiffs speculate that the contents of those emails

6

may have helped them survive summary judgment with respect to the claims of gender and race discrimination that they asserted against defendants. Second, plaintiffs contend the district court erred in granting summary judgment in favor of defendants on those claims of gender and race discrimination. For the reasons that follow, we conclude that both of these issues lack merit.

*Denial of discovery of emails*

*a) Background*

On May 20, 2011, plaintiffs served on defendants their first set of discovery requests. That set of discovery requests apparently sought, in pertinent part, the production of all communications, including emails, between Greene, DuRán, and other City employees regarding the tunnel-cleaning contract.[2] Defendants served their response on July 6, 2011. In doing so, defendants also produced a privilege log listing certain communications, including emails, that, in defense counsel's view, involved "the giving of legal information or advice." Id. at 516; see id., Vol. I at 66-68 (copy of privilege log).

On August 15, 2011, the magistrate judge overseeing discovery in the case held a telephonic discovery hearing to address plaintiffs' "oral motion to compel production of documents relating to [that] privilege log." Id., Vol. II at 511. In support of their motion, plaintiffs argued that defendant DuRán, "who happens to be an attorney, also was serving in the role of decision maker as it relates to . . . the tunnel cleaning contract[]." Id.

---

[2] The record on appeal does not include a copy of plaintiffs' first set of discovery requests.

Consequently, plaintiffs argued, "communications between and among [DuRán], the other named defendant, Mr. Greene, and other persons regarding the tunnel cleaning contract [we]re discoverable because they [we]re relevant to the claims made in this case." Id. at 512. Upon questioning by the magistrate judge, defense counsel submitted that "each of the e-mails . . . sought by the plaintiffs . . . were prepared for the purpose of [DuRán] giving legal advice." Id. at 518 (question mark omitted).

The magistrate judge denied plaintiffs' motion. In support, the magistrate judge first noted that "naming individual attorneys as defendants in this lawsuit . . . does not constitute a waiver of the attorney-client privilege." Id. In turn, the magistrate judge noted that Federal Rule of Civil Procedure 26(b)(5) provides "a process by which an entity or a party to litigation must claim privilege and that is by creating a privilege log," and that defendants had attempted to comply with that process. Id. The magistrate judge directed defense counsel, however, "to amend the privilege log to clearly state where each item in which legal advice was sought or received, that the purpose of the item was to seek or to obtain legal advice." Id. at 519. Such an amendment, the magistrate judge concluded, "w[ould] make the privilege log comply with Rule 26(f) and . . . create an adequate record that the e-mails that are sought by plaintiff are, in fact, privileged and may not be produced." Id. at 520.[3]

On August 26, 2011, plaintiffs filed with the district court objections to the

---

[3] A copy of defendants' amended privilege log is contained in the record on appeal. App. Vol. I at 100-03.

8

magistrate judge's ruling. Plaintiffs argued, in pertinent part, that the magistrate judge could not have "ma[d]e an informed decision without reviewing the disputed emails *in camera*." Id., Vol. I at 57. Consequently, plaintiffs "request[ed] the Court [to] . . . order Defendants to produce all disputed emails for the Court's *in camera* review." Id. at 63. The district court, however, overruled plaintiffs' objections to the magistrate judge's ruling.

*b) Analysis*

On appeal, plaintiffs argue that the district court erred in overruling their objections to the magistrate judge's ruling. The gist of their claim is that *in camera* review is essential to a proper ruling on a claim of attorney-client privilege. See Aplt. Br. at 26 ("the district court . . . should have conducted an *in camera* review of the emails to determine whether or not any [we]re discoverable.").

The problem with plaintiffs' argument, however, is that they failed to request *in camera* review from the magistrate judge.[4] In other words, the first time they suggested that *in camera* review was necessary was in the objections that they filed with the district court regarding the magistrate judge's ruling on their oral motion to compel. Under our

_____

[4] During oral arguments in this appeal, plaintiffs' counsel claimed that she requested the magistrate judge to conduct an *in camera* review of the emails. Our subsequent review of both the record on appeal and the district court's electronic docketing system fails to reveal any evidence to substantiate that claim. In particular, no request for *in camera* review was made during the August 15, 2011, hearing on plaintiffs' oral motion to compel. Consequently, the first time that *in camera* review was suggested was in plaintiffs' written objections to the magistrate judge's ruling on the oral motion to compel.

9

longstanding precedent, that argument was untimely and, to the extent it is now being asserted by plaintiffs in this appeal, is deemed waived. E.g., United States v. Garfinkle, 261 F.3d 1030, 1031 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived."); Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

Even assuming that we could overlook our longstanding waiver rule, plaintiffs have failed to offer adequate justification for *in camera* review under the specific facts of this case. In particular, plaintiffs cite to no evidence or legal authorities that support their assertion that DuRán, in dealing with the tunnel-cleaning contract, was acting in the role of a contract manager rather than in his official role as an attorney for the City. Although it is true that DuRán and Greene were assigned by Kim Day, the Manager of Aviation at DIA, to oversee the conclusion and possible extension of the tunnel-cleaning contract between the City and plaintiffs, nothing about that assignment, according to the record before us, necessarily took DuRán out of his role as the Director of Airport Legal Services. Indeed, a review of the defendants' general descriptions of the withheld email messages indicates that DuRán acted in precisely that role by providing legal advice to other City employees as it pertained to the tunnel-cleaning contract and plaintiffs' complaints that the contract might not be extended for an additional year. Plaintiffs' conclusory arguments to the contrary are insufficient to call into question the descriptions contained in defendants' revised privilege log.

*The district court's grant of summary judgment*

In their second issue on appeal, plaintiffs contend the district court erred in granting summary judgment in favor of defendants with respect to plaintiffs' claims of gender and race discrimination arising out of defendants' failure to extend the tunnel-cleaning contract.

*a) Standard of review*

"We review the district court's summary judgment decision de novo, applying the same standards as the district court." Gol TV, Inc. v. EchoStar Satellite Corp., 692 F.3d 1052, 1055 (10th Cir. 2012). "Under those standards, we will affirm a grant of summary judgment if there is no genuine dispute of material fact and the prevailing party is entitled to judgment under the law." Kan. Penn Gaming, LLC v. HV Prop. of Kan., LLC, 662 F.3d 1275, 1284 (10th Cir. 2011) (internal quotation marks omitted).

*b) Analysis of the district court's decision*

The district court offered two alternative grounds for granting summary judgment in favor of defendants with regard to plaintiffs' claims arising out of the termination of the tunnel-cleaning contract. First, the district court concluded that plaintiffs' brief in opposition to defendants' motion for summary judgment was deficient because the argument section thereof contained only "one citation to the record . . . and no analysis of the actual elements of [plaintiffs'] claims" under Sections 1981 and 1983. App., Vol. II at 503. This deficiency, the district court concluded, was fatal to plaintiffs' claims. Id. at 503, 504 n.1 ("The Court notes that Plaintiffs do not address either of the prima facie

11

standards in their opposition to the Motions for Summary Judgment. Because it is their burden to make out a *prima facie* case, this failure is fatal to their claims."). Second, and alternatively, the district court concluded that, even overlooking plaintiffs' deficient briefing, "Plaintiffs . . . utterly failed to put forth any evidence showing that Greene and Duran [sic] were motivated by Plaintiffs' race or gender when they decided not to submit the second year of the contract to City Council." Id. at 506.

In their appeal, plaintiffs ignore the first ground cited by the district court for granting summary judgment in favor of defendants, i.e., the deficiencies in plaintiffs' opposition brief. Having carefully examined the record on appeal, however, including the summary judgment briefs, we conclude that the district court's determination on that point was correct. Plaintiffs' brief in opposition to the defendants' motion for summary judgment contained a section entitled "STANDARD OF REVIEW AND APPLICABLE LAW." App., Vol. II at 301. In that section, plaintiffs generally described the law applicable to claims under 42 U.S.C. §§ 1981 and 1983, including claims of violations of the Equal Protection Clause of the Fourteenth Amendment. Id. at 302-03. Later on, in a section of their opposition brief entitled "ARGUMENT," id. at 326, plaintiffs briefly addressed their claims pertaining to "Tunnel Cleaning - Greene and Duran [sic]," id. at 329:

> The facts show that Janzen told Plaintiffs that the tunnel cleaning contract was for two years, and would be written as two one-year contracts with each being worth $390,000. The facts also show that Greene and Duran [sic] promised Plaintiffs that they would prepare and submit to the City Council the second year $390,000 contract for its approval, but failed

12

to do so.

A reasonable jury could find that Plaintiffs were treated differently than white male owned companies. CAM and Carnation are among the white male owned companies that received multi-year contracts that specifically contain the language stating that it is for one or more years, with two or three year extensions. (citation omitted). However, Plaintiffs' contract was for one year, an addendum for 90 days, and a broken promise of an additional year.

A reasonable jury could find that Defendants' explanation is a pretext to mask a discriminatory motive. Greene and Duran [sic] promised Plaintiffs they would prepare and submit to the City Council a second year contract for $390,000. They put this promise in writing. Yet, just a few months later, in April 2010, without any warning, they sent a letter to ASI telling it the contract ended. At no time before this lawsuit was filed did Greene or Duran [sic] tell Plaintiffs that a business decision was made not to continue the work. In fact, they told Plaintiffs that a discussion was held and a business decision was made to move forward with sending the $390,000 contact to the City Council for its approval.

Id. at 329-30. As the district court correctly noted, plaintiffs' analysis "contained only "one citation to the record . . . and no [discussion] of the actual elements of [their] claims" under Sections 1981 and 1983. Id. at 503. Thus, the district court correctly concluded that plaintiffs' analysis of their claims was inadequate to establish that genuine issues of material fact existed with respect to their claims against Greene and DuRán.

As noted, plaintiffs focus their appellate arguments on the district court's alternative basis for granting summary judgment in favor of defendants, i.e., its conclusion that plaintiffs "utterly failed to put forth any evidence showing that Greene and Duran [sic] were motivated by Plaintiffs' race or gender when they decided not to submit the second year of the contract to City Council." Id. at 506. Even if we were to

13

overlook the inadequacies of plaintiffs' summary judgment briefing, we would, for the reasons we shall outline below, affirm the district court's alternative basis for summary judgment.

"Section 1981 forbids all intentional racial [or sexual] discrimination in the making and enforcement of private or public contracts." Allstate Sweeping, LLC v. Black, 706 F.3d 1261, 1265 (10th Cir. 2013) (internal quotation marks omitted). "Independent contractors can state a discrimination claim under § 1981." Id. However, "§ 1981 claims for damages against municipalities [must] be brought under § 1983." Bolden v. City of Topeka, 441 F.3d 1129, 1134 (10th Cir. 2006). Thus, in this case, plaintiffs' claims of race and sex discrimination are being brought against defendants Green and DuRán pursuant to § 1981 and against the City pursuant to § 1983.

Where, as here, a plaintiff relies on circumstantial, rather than direct, evidence to prove that a defendant has engaged in discrimination in violation of § 1981, this court evaluates the claim employing the burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Baca v. Sklar, 398 F.3d 1210, 1218 n.3 (10th Cir. 2005) (holding that elements of discrimination are the same whether the claim is brought under § 1981 or Title VII). Under McDonnell Douglas, the plaintiff bears the initial burden of establishing a prima facie case of race or sex discrimination. 411 U.S. at 802. If a prima facie case is established, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the challenged adverse action. Bryant v. Farmers Ins. Exch., 432 F.3d 1114, 1124-25 (10th Cir. 2005).

14

If the defendant does so, the burden shifts back to the plaintiff to show that the defendant's proffered reason is pretextual. Sanchez v. Denver Pub. Sch., 164 F.3d 527, 531 (10th Cir. 1998).

To make out a prima facie case of discrimination, a plaintiff must demonstrate "(1) membership in a protected class, (2) adverse employment action, and (3) disparate treatment among similarly situated employees." Orr v. City of Albuquerque, 417 F.3d 1144, 1149 (10th Cir. 2005).

In this case, the district court noted that plaintiffs "d[id] not address . . . the prima facie standards in their opposition to the Motion[] for Summary Judgment" and that "this failure [wa]s fatal to their claims." App. Vol. II at 504 n.1. Alternatively, the district court simply assumed, without deciding, "that Plaintiffs established a prima facie case for both race and gender discrimination." Id. at 504. In turn, the district court concluded "that Defendants ha[d] come forward with a non-discriminatory basis for their actions," i.e., defendants decided, due to cost concerns, to move the tunnel-cleaning services in-house. Id. Lastly, the district court concluded that plaintiffs failed to present sufficient evidence to allow a jury to find that the defendants' proffered reasons were pretextual. Id. at 505-06.

In their appeal, plaintiffs challenge only this latter conclusion, arguing that they "produced evidence showing that male-owned companies were treated differently and more favorably than [plaintiffs]." Aplt. Br. at 28. Specifically, plaintiffs assert that the purportedly male-owned companies "CAM and Carnation are similarly situated to

15

[plaintiffs] because they too received contracts from the City to provide cleaning services at DIA." Id. "However," plaintiffs argue, "CAM and Carnation received the promised multi-year contracts; [plaintiffs] did not." Id. According to plaintiffs, "[t]he district court erred when it found that CAM and Carnation [we]re not 'appropriate comparators' presumably because Greene and DuRán did not handle their contracts and had not previously 'handled an extension of a vendor's contract.'" Id. at 28-29 (quoting App. Vol. II at 505). Plaintiffs assert that CAM and Carnation are, indeed, similarly situated because they "are independent contractors providing cleaning services at DIA" and, unlike plaintiffs, they "received their promised multi-year contracts." Id. at 29.

Plaintiffs' arguments lack merit. Although the record supports plaintiffs' assertion that CAM and Carnation were independent contractors providing cleaning services at DIA, it is undisputed that neither CAM or Carnation, nor any other company besides plaintiffs, ever contracted with the City to clean the baggage tunnels at DIA. Rather, the fifteen-month period covered by plaintiffs' contract with the City was the first and only time that any independent company had provided tunnel-cleaning services. Further, there is no evidence in the record that CAM or Carnation were ever provided contract extensions like the one sought by plaintiffs.[5] Lastly, as the district court noted, it is undisputed that defendants Greene and DuRán had never before overseen a contract

_____

[5] To be sure, the record indicates that CAM and Carnation sometimes were granted multi-year contracts. Importantly, however, plaintiffs do not complain that they were discriminated against at the outset of their contract with the City, i.e., by being denied a multi-year contract at the time the contract was signed.

16

extension, and thus had never been involved in the City's contracts with CAM and Carnation. Thus, considering all of these factors, it is clear that neither CAM nor Carnation were similarly situated to plaintiffs and thus were not "appropriate comparators." As a result, we conclude the district court was correct in determining that evidence regarding the City's contracts with CAM and Carnation was insufficient to allow a jury to find pretext.

Plaintiffs also suggest that they "produced evidence showing that defendants' act in failing to issue the second-year tunnel cleaning contract lacked a rational basis." Aplt. Br. at 29. The threshold problem with this argument is that it was not raised below and thus has been waived for purposes of appeal. See Turner v. Pub. Serv. Co. of Colo., 563 F.3d 1136, 1143 (10th Cir. 2009) ("Absent extraordinary circumstances, we will not consider arguments raised for the first time on appeal."). Even overlooking that fatal problem, plaintiffs' suggestion is based on little more than their suspicion that the privileged emails "between co-final decision makers Green and DuRán likely contain relevant and probative evidence concerning their reasons for failing to keep their promises to OneSource/ASI." Aplt. Br. at 29.

In addition, plaintiffs suggest that the "after-the-lawsuit" timing of defendants' disclosure of their reason for not renewing the contract, i.e., "because they decided to do the work in-house," calls into question whether this proffered reason is pretextual. Id. at 30. But, as the district court concluded, that timing alone is not sufficient to allow them to survive summary judgment. More specifically, a jury could not reasonably find, based

17

solely on the timing of defendants' disclosure of their reason for not renewing the contract, that the reason was pretextual and that the real reason was because of plaintiffs' race or gender. As the district court noted, "there is no evidence that Defendants have changed the proffered basis for their decision or offered 'a bagful of legitimate reasons' that would cause a fact-finder to disbelieve the proffered basis." App. Vol. II at 505 (quoting Smith v. Okla. ex rel. Tulsa Cnty. Dist. Attorney, 245 F. App'x 807, 817 (10th Cir. 2007)).

Lastly, plaintiffs argue that they "produced evidence showing that the City . . . is liable for the injuries and damages they suffered" because "[t]he actions and failures to act about which [they] complain were taken by persons (Greene and DuRán) with final decision making authority." Aplt. Br. at 34. But, as we have already discussed, plaintiffs failed to present sufficient evidence to allow a jury to reasonably find that Greene and DuRán discriminated against them on the basis of their race or gender. Consequently, there is in turn no basis for imposing liability on the City.

Defendants' unopposed motion to supplement the record on appeal is GRANTED and the judgment of the district court is AFFIRMED.


Entered for the Court


Mary Beck Briscoe
Chief Judge


18